IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXUS JOHNSON<br>855 East 144th Street<br>Cleveland, OH 44110<br>Plaintiff,<br><br>v.<br><br>CITY OF CLEVELAND<br>601 Lakeside Ave.<br>Room 230<br>Cleveland, OH 44114<br><br>-and-<br><br>JACARI PRESTON<br>500 Lakeside Ave.<br>2nd Floor<br>Cleveland, OH 44114<br><br>-and-<br><br>CATHY GARDNER<br>500 Lakeside Ave.<br>2nd Floor<br>Cleveland, OH 44114<br><br>Defendants. | ) | CASE NO.<br><br>JUDGE:<br><br>**<u>COMPLAINT FOR DAMAGES AND REINSTATEMENT</u>**<br><br>**<u>JURY DEMAND ENDORSED HEREIN</u>** |

Plaintiff, Alexus Johnson, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## INTRODUCTION

1. This is an employment discrimination, harassment, retaliation, disability discrimination, failure-to-accommodate, and unlawful leave-interference action arising from Defendants' mistreatment and termination of Plaintiff Alexus Johnson.
2. Alexus is a transgender man. He uses he/him pronouns.
3. Defendants knew Alexus was transgender. They knew he was transitioning. They knew he used he/him pronouns. And they knew that he was entitled to come to work without being mocked, misgendered, threatened, harassed, singled out, denied protected medical leave rights, or fired because of who he is and because he complained.
4. Instead of following the law, Defendants did exactly what federal and Ohio law forbid.
5. Defendant Cathy Gardner repeatedly targeted Alexus because of his transgender status, gender identity, gender expression, transition, and sex. She focused on his appearance, commented on his transition, refused to use his correct pronouns, stated that she would not call him "a he," and treated him more harshly than similarly situated non-transgender and/or female-presenting employees.
6. Defendant Jacari Preston threatened Alexus, misgendered him, and stated that Alexus was "still a female."
7. Alexus reported the discrimination, harassment, misgendering, and threats to Human Resources. He provided video evidence. He identified witnesses.
8. Defendants ignored the evidence, failed to conduct a full and fair investigation, protected the harassers, blamed the victim, began disciplining Alexus, and terminated him.

9. Around the same time, because the harassment and hostile work environment caused significant anxiety and depression, Alexus requested medical leave, submitted documentation from his medical providers, and was approved for approximately sixty days of leave.
10. Despite approving Alexus's medical leave, the City failed to provide required notices under the Family and Medical Leave Act, failed to designate his leave properly, failed to explain his rights and responsibilities, and then fired him for allegedly being "AWOL" while he was still on approved medical leave.
11. Defendants' conduct was not accidental. It was the predictable result of discriminatory animus, retaliatory motive, deliberate indifference, and a refusal to comply with the basic requirements of Title VII, the Americans with Disabilities Act, the Family and Medical Leave Act, and Ohio Revised Code Chapter 4112.
12. Alexus brings this action to recover all damages, equitable relief, attorney's fees, costs, interest, and all other relief available under federal and Ohio law.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Family and Medical Leave Act.
14. This Court has supplemental jurisdiction over Plaintiff's Ohio-law claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.
15. Venue is proper in this District under 28 U.S.C. § 1391 because the unlawful employment practices occurred in this District, Plaintiff worked in this District, Defendant City of Cleveland

resides in this District, and the relevant employment records are maintained or administered in this District.

16. This Court has personal jurisdiction over Defendants because Defendants reside in Ohio, conduct business in Ohio, employed Plaintiff in Ohio, and committed the unlawful acts described in this Complaint in Ohio.

## PARTIES

17. Plaintiff Alexus Johnson is an individual and resident of Ohio.

18. Alexus is a transgender man and uses he/him pronouns.

19. Alexus was employed by Defendant City of Cleveland in the Department of Public Works, Division of Parking Facilities.

20. Defendant City of Cleveland is a municipal corporation and political subdivision organized under the laws of the State of Ohio.

21. At all relevant times, Defendant City of Cleveland was an employer within the meaning of Title VII, the ADA, the FMLA, and Ohio Revised Code Chapter 4112.

22. At all relevant times, Defendant City of Cleveland employed the number of employees required for coverage under Title VII, the ADA, the FMLA, and Ohio Revised Code Chapter 4112.

23. At all relevant times, Defendant Cathy Gardner was employed by the City as a supervisor in the Department of Public Works, Division of Parking Facilities.

24. At all relevant times, Defendant Cathy Gardner was an employee, supervisor, manager, agent, and/or person acting directly or indirectly in the interest

25. Defendants Gardner and Preston are sued individually under Ohio Revised Code § 4112.02(I) and/or § 4112.02(J) for their own retaliatory, aiding-and-abetting, coercive, obstructive, and/or discriminatory conduct.

## ADMINISTRATIVE CONDITIONS PRECEDENT

26. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission.
27. Plaintiff has satisfied all administrative conditions precedent applicable to his Title VII and ADA claims.
28. Plaintiff has timely filed charges of discrimination with the Ohio Civil Rights Commission relating to the individual defendants.
29. To the extent any right-to-sue notice is required, Plaintiff has received, requested, or will request the required notice and will amend this Complaint if necessary to plead the date of receipt.
30. No administrative exhaustion is required for Plaintiff's FMLA claims.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

31. Defendant City of Cleveland hired Plaintiff in or around July 2024.
32. Plaintiff worked as a parking attendant for the City's Department of Public Works, Division of Parking Facilities.
33. Plaintiff performed his job satisfactorily throughout his employment.
34. Before Plaintiff complained about discrimination, harassment, misgendering, and threats, he had not been subjected to the discipline and write-ups that followed his protected complaints.

35. Plaintiff was qualified for his position.

36. Plaintiff could perform the essential functions of his position, with or without reasonable accommodation.

**B. Plaintiff Is Transgender, Used He/Him Pronouns, And Was Targeted Because Of His Gender Identity, Transgender Status, Gender Expression, Transition, And Sex**

37. Plaintiff is transgender and was transitioning from female to male during his employment.

38. Plaintiff has a shaved head.

39. Defendants knew Plaintiff was transgender.

40. Defendants knew Plaintiff used he/him pronouns.

41. Defendants knew Plaintiff was transitioning.

42. Defendants knew or perceived that Plaintiff did not conform to their stereotypes about sex, gender, appearance, gender expression, and how someone assigned female at birth should look, identify, speak, dress, be addressed, or exist in the workplace.

43. After Plaintiff transferred departments through a shift bid in or around mid-2025, he began working under Defendants Gardner and Preston.

44. After that transfer, Defendants' unlawful conduct escalated.

45. Gardner repeatedly focused on Plaintiff's appearance and gender identity.

46. Gardner made derogatory comments to Plaintiff.

47. Gardner called Plaintiff "dumb."

48. Gardner repeatedly monitored, criticized, and harassed Plaintiff about his break times.

49. Gardner did not treat similarly situated non-transgender and/or female-presenting employees the same way.

50. Gardner singled Plaintiff out for scrutiny and discipline.

51. Gardner knew that Plaintiff needed periodic testosterone shots as part of his transition.

52. Gardner made comments that transgender employees should not receive benefits to obtain gender-affirming care.

53. Gardner's comments were discriminatory, humiliating, and directly related to Plaintiff's transgender status, gender identity, gender expression, transition, and sex.

54. Gardner's conduct communicated to Plaintiff that his identity was unwelcome, that his transition was disfavored, and that he would be treated worse because he was transgender.

**C. October 17, 2025, Gardner Publicly Escalated Her Harassment And Refused To Respect Plaintiff's Correct Pronouns**

55. On or about October 17, 2025, Plaintiff was working on the ramps.

56. On or about October 17, 2025, Gardner yelled at Plaintiff.

57. On or about October 17, 2025, Gardner confronted Plaintiff about his break time.

58. On or about October 17, 2025, Gardner made comments about Plaintiff's transition.

59. On or about October 17, 2025, Gardner repeatedly misgendered Plaintiff.

60. On or about October 17, 2025, Gardner continued referring to Plaintiff as female.

61. On or about October 17, 2025, Gardner stated that she would not use Plaintiff 'scorrect pronouns.

62. Gardner stated that she would not call Plaintiff "a he."

63. Gardner stated that she would only call Plaintiff "they."

64. Gardner's refusal to use Plaintiff's correct pronouns was intentional.

65. Gardner's refusal to use Plaintiff's correct pronouns was based on Plaintiff's transgender status, gender identity, gender expression, transition, sex, and failure to conform to sex-based stereotypes.

66. Gardner's conduct was severe, degrading, humiliating, and objectively offensive.
67. Gardner's conduct made Plaintiff feel unsafe, disrespected, singled out, and targeted at work.
68. Plaintiff immediately reported Gardner's conduct to Human Resources on or about October 17, 2025.
69. Plaintiff's report to Human Resources was protected activity under Title VII and Ohio Revised Code Chapter 4112.
70. The City knew Plaintiff had engaged in protected activity.
71. Gardner knew or learned that Plaintiff had engaged in protected activity.
72. Shortly after Plaintiff reported Gardner's conduct, Plaintiff began receiving write-ups.
73. Plaintiff had not been written up before engaging in protected activity.
74. The timing, sequence, and circumstances of the write-ups establish retaliatory motive.
75. Defendants used write-ups and discipline to punish Plaintiff for opposing and reporting unlawful discrimination and harassment.

**D. November 11, 2025, Preston Threatened And Misgendered Plaintiff**

76. On or about November 11, 2025, Plaintiff reported to Human Resources that Preston had threatened him and misgendered him.
77. Preston stated that he would "f her up."
78. Preston stated that Plaintiff was "still a female."
79. Preston's statements were threatening, discriminatory, hostile, and based on Alexus's transgender status, gender identity, gender expression, transition, sex, and failure to conform to sex-based stereotypes.
80. Preston intentionally misgendered Plaintiff.
81. Preston's threat caused Plaintiff to reasonably fear for his safety at work.

82. Plaintiff recorded the incident.

83. Plaintiff provided the video recording to Human Resources.

84. Plaintiff also provided Human Resources with names of witnesses.

85. Plaintiff's November 11, 2025 report to Human Resources was protected activity under Title VII and Ohio Revised Code Chapter 4112.

86. Defendants knew Plaintiff had engaged in protected activity.

87. Despite the seriousness of Preston's threat, despite the direct misgendering, despite the video evidence, and despite the available witnesses, Defendants failed to conduct a full, fair, and reasonable investigation.

88. The City did not meaningfully interview the witnesses Plaintiff identified.

89. The City did not credibly or adequately address Preston's threat.

90. The City did not take prompt and appropriate corrective action reasonably calculated to end the harassment.

91. Instead, Plaintiff, the victim of the threat and harassment, was written up.

92. Preston was not meaningfully disciplined.

93. The City later concluded that Preston had not done anything wrong.

94. The City's conclusion was false, unreasonable, and unsupported by the evidence known to the City.

95. The City's investigation was a sham, and a ratification of discriminatory and retaliatory conduct.

**E. The City Failed To Protect Plaintiff From A Hostile Work Environment**

96. The harassment Plaintiff experienced was not isolated.

97. Defendants' conduct included repeated misgendering, comments about Plaintiff's transition, comments about gender-affirming care, insults, heightened scrutiny, threats, discipline, and termination.

98. The harassment was based on Plaintiff' transgender status, gender identity, gender expression, transition, sex, and failure to conform to sex-based stereotypes.

99. The harassment was unwelcome.

100. The harassment was severe and/or pervasive.

101. The harassment altered the terms and conditions of Plaintiff's employment.

102. The harassment created an intimidating, hostile, abusive, humiliating, and offensive work environment.

103. Management-level employees participated in the harassment.

104. Management-level employees knew about the harassment.

105. Human Resources knew about the harassment.

106. The City had actual notice of the harassment.

107. The City failed to take prompt, reasonable, and appropriate remedial action.

108. The City's failure to act emboldened Gardner and Preston and made the workplace more dangerous and hostile for Plaintiff.

109. By refusing to correct the harassment, Defendants ratified the conduct.

**F. The Harassment Caused And Exacerbated Alexus's Anxiety And Depression**

110. The hostile work environment caused Plaintiff significant stress, anxiety, depression, emotional distress, humiliation, fear, and loss of dignity.

111. Plaintiff sought medical treatment and support because of the anxiety and depression caused and/or exacerbated by the work environment.

112. Plaintiff's anxiety and depression substantially limited one or more major life activities, including but not limited to working, sleeping, concentrating, thinking, communicating, interacting with others, and caring for himself.

113. Plaintiff had an actual disability under the ADA and Ohio law.

114. Plaintiff had a record of disability under the ADA and Ohio law.

115. Defendants regarded Plaintiff as disabled under the ADA and Ohio law.

116. Defendants knew or should have known that Plaintiff had a medical condition requiring leave and/or workplace accommodation.

## G. Plaintiff Requested Medical Leave And Provided Medical Documentation

117. On or about November 17, 2025, Plaintiff formally requested medical leave for approximately sixty days.

118. Alexus requested leave because of anxiety and depression stemming from the harassment and hostile work environment.

119. Alexus submitted documentation from his medical providers.

120. The City received Alexus's medical documentation.

121. The City approved Alexus's medical leave.

122. Medical leave was a reasonable accommodation under the ADA and Ohio law.

123. Defendants were required to engage in a good-faith interactive process with Alexus.

124. Defendants failed to engage in a good-faith interactive process.

125. Defendants failed to communicate meaningfully with Alexus about his limitations, his return-to-work status, available alternative accommodations, leave protections, or other alternatives.

**H. The City Failed To Provide Required FMLA Notices And Interfered With Plaintiff's FMLA Rights**

126. Defendant City of Cleveland was a covered employer under the FMLA.

127. Alexus was an eligible employee under the FMLA because he had worked for the City for at least twelve months and had worked at least 1,250 hours during the twelve months preceding his need for leave.

128. Alexus had a serious health condition under the FMLA.

129. Alexus gave the City sufficient notice of his need for medical leave.

130. Alexus's request for medical leave gave the City notice that the leave may qualify for FMLA protection.

131. Alexus did not need to specifically invoke the FMLA by name for the City's obligations to begin.

132. The City was required to provide Alexus with the notices required by the FMLA and its implementing regulations.

133. The City failed to provide Alexus with a general notice, eligibility notice, rights and responsibilities notice, and/or designation notice required by the FMLA.

134. The City failed to explain Alexus's FMLA rights.

135. The City failed to designate Alexus's leave as FMLA-protected leave.

136. The City failed to inform Alexus how much leave would count against his FMLA entitlement.

137. The City failed to protect Alexus's job while he was on FMLA-qualifying leave.

138. The City failed to restore Alexus to the same or equivalent position.

139. The City interfered with, restrained, and denied Alexus's exercise of FMLA rights.

**I. The City Terminated Plaintiff While He Was On Approved Medical Leave**

140. Alexus was still within his approved medical leave period on or about December 17, 2025.

141. On or about December 17, 2025, the City terminated Alexus.

142. The City stated that Alexus was terminated for being "AWOL."

143. The City's stated reason was false.

144. Alexus was not absent without leave.

145. Alexus was absent on approved medical leave.

146. Alexus's approved medical leave was related to a serious health condition and disability.

147. The City's "AWOL" explanation was pretext for discrimination, retaliation, disability discrimination, failure to accommodate, FMLA interference, and FMLA retaliation.

148. The City terminated Alexus because of his transgender status, gender identity, gender expression, transition, sex, disability, protected complaints, request for accommodation, and use of protected leave.

149. Alternatively, those protected categories and protected activities were motivating factors in Defendants' decision to terminate Alexus.

150. Alternatively, those protected categories and protected activities were but-for causes of Defendants' decision to terminate Alexus.

151. Defendants' conduct caused Alexus to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, loss of enjoyment of life, damage to reputation, and other damages.

**J. The City Issued A Defective Investigation Letter After Plaintiff Had Already Been Fired**

152. On or about December 24, 2025, the City issued a written letter stating that its investigation was complete.

153. The City stated that it did not substantiate Alexus's allegations.

154. The City stated that the investigation did not conclude that Alexus was subjected to unwelcome misconduct.

155. The City stated that there was no evidence of harassment that created a hostile work environment.

156. The City's conclusions were false, unreasonable, and contradicted by the evidence.

157. The City ignored or discounted Alexus's reports, the video evidence, the threat, the misgendering, and the witnesses Alexus identified.

158. The City's investigation further harmed Alexus because it ratified Defendants' unlawful conduct, denied the reality of the harassment, and provided cover for his unlawful termination.

## CAUSES OF ACTION

### COUNT I: FEDERAL LGBTQ+ / TRANSGENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT CITY OF CLEVELAND

159. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

160. Title VII prohibits discrimination because of sex.

161. Discrimination because an employee is transgender, because of an employee's gender identity, or because an employee fails to conform to sex-based stereotypes is discrimination because of sex under Title VII.

162. Plaintiff is a member of a protected class because he is transgender and because of his gender identity, gender expression, transition, and sex.

163. Plaintiff was qualified for his position.

164. Plaintiff suffered adverse employment actions, including but not limited to heightened scrutiny, discipline, write-ups, denial of fair treatment, denial of equal terms and conditions of employment, termination, and other materially adverse changes in employment.

165. The City took those adverse actions because of Plaintiff's transgender status, gender identity, gender expression, transition, sex, and failure to conform to sex-based stereotypes.

166. The City's managers, supervisors, agents, and employees discriminated against Plaintiff by intentionally misgendering him, refusing to use his correct pronouns, commenting negatively about his transition, opposing benefits for gender-affirming care, threatening him, disciplining him, and terminating him.

167. The City is liable for the discriminatory acts of its supervisors, managers, agents, and employees.

168. The City's stated reasons for disciplining and terminating Plaintiff were false and pretextual.

169. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT II: STATE LGBTQ+ / TRANSGENDER DISCRIMINATION IN VIOLATION OF OHIO REVISED CODE CHAPTER 4112 AGAINST DEFENDANT CITY OF CLEVELAND**

170. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

171. Ohio Revised Code § 4112.02 prohibits discrimination in employment because of sex.

172. Discrimination because an employee is transgender, because of an employee's gender identity, or because an employee fails to conform to sex-based stereotypes constitutes discrimination because of sex under Ohio law.

173. Plaintiff is a member of a protected class under Ohio law because he is transgender and because of his gender identity, gender expression, transition, and sex.

174. Plaintiff was qualified for his position.

175. The City discharged Plaintiff without just cause and otherwise discriminated against him with respect to hire, tenure, terms, conditions, privileges, and matters directly or indirectly related to employment.

176. The City discriminated against Plaintiff because of his transgender status, gender identity, gender expression, transition, sex, and failure to conform to sex-based stereotypes.

177. The City's conduct violated Ohio Revised Code § 4112.02.

178. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT III: FEDERAL HOSTILE WORK ENVIRONMENT BASED ON LGBTQ+ / TRANSGENDER STATUS TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT CITY OF CLEVELAND**

179. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

180. Title VII prohibits harassment that is based on an employee's protected status and that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

181. Plaintiff was subjected to unwelcome harassment.

182. The harassment was based on Plaintiff's transgender status, gender identity, gender expression, transition, and failure to conform to sex-based stereotypes.

183. The harassment included, but was not limited to, repeated misgendering, refusal to use correct pronouns, comments about Plaintiff's transition, comments about gender-affirming care, insults, differential scrutiny, threats, discipline, and retaliatory treatment.

184. The harassment was severe and/or pervasive.

185. The harassment unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, abusive, offensive, and humiliating work environment.

186. The harassment was committed by supervisors, managers, agents, and employees of the City.

187. The City knew or should have known about the harassment.

188. The City failed to take prompt and appropriate corrective action.

189. The City instead ratified the harassment, protected the harassers, blamed Plaintiff, and terminated him.

190. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT IV: STATE HOSTILE WORK ENVIRONMENT BASED ON LGBTQ+ / TRANSGENDER STATUS OHIO REVISED CODE CHAPTER 4112 AGAINST DEFENDANT CITY OF CLEVELAND**

191. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

192. Ohio Revised Code Chapter 4112 prohibits hostile work environment harassment based on protected status.

193. Plaintiff was subjected to unwelcome harassment based on his transgender status, gender identity, gender expression, transition, sex, and failure to conform to sex-based stereotypes.

194. The harassment was severe and/or pervasive enough to create an intimidating, hostile, abusive, offensive, and humiliating work environment.

195. The City knew or should have known about the harassment.

196. The City failed to take prompt and appropriate corrective action.

197. The City's conduct violated Ohio Revised Code Chapter 4112.

198. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT V: FEDERAL SEX / GENDER DISCRIMINATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT CITY OF CLEVELAND**

199. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

200. Title VII prohibits discrimination because of sex.

201. Plaintiff was protected from discrimination because of sex, gender, gender expression, and sex-based stereotypes.

202. Plaintiff was qualified for his position.

203. Plaintiff suffered adverse employment actions, including heightened scrutiny, discipline, write-ups, denial of a fair investigation, denial of equal employment terms and conditions, and termination.

204. Plaintiff's sex, gender, gender expression, and failure to conform to sex-based stereotypes were motivating factors and/or but-for causes of the City's adverse actions.

205. Defendants treated Plaintiff less favorably than similarly situated employees who were not transgender, who did not transition, who did not use he/him pronouns, and/or who conformed to Defendants' expectations about sex and gender.

206. The City's stated reasons for its actions were false and pretextual.

207. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT VI: STATE SEX / GENDER DISCRIMINATION OHIO REVISED CODE CHAPTER 4112 AGAINST DEFENDANT CITY OF CLEVELAND**

208. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

209. Ohio Revised Code § 4112.02 prohibits discrimination because of sex.

210. Plaintiff was protected from discrimination because of sex, gender, gender expression, and sex-based stereotypes.

211. Plaintiff was qualified for his position.

212. The City discharged Plaintiff without just cause and otherwise discriminated against him with respect to hire, tenure, terms, conditions, privileges, and matters directly or indirectly related to employment.

213. The City discriminated against Plaintiff because of sex, gender, gender expression, and failure to conform to sex-based stereotypes.

214. The City's conduct violated Ohio Revised Code Chapter 4112.

215. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT VII: FEDERAL HOSTILE WORK ENVIRONMENT BASED ON SEX / GENDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT CITY OF CLEVELAND**

216. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

217. Plaintiff was subjected to unwelcome harassment based on sex, gender, gender expression, and failure to conform to sex-based stereotypes.

218. The harassment included repeated misgendering, refusal to use correct pronouns, comments about Plaintiff's transition, insults, heightened scrutiny, threats, and adverse treatment.

219. The harassment was severe and/or pervasive.

220. The harassment altered the terms and conditions of Plaintiff's employment.

221. The harassment created an intimidating, hostile, abusive, offensive, and humiliating work environment.

222. The City knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

223. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT VIII: STATE HOSTILE WORK ENVIRONMENT BASED ON SEX / GENDER OHIO REVISED CODE CHAPTER 4112 AGAINST DEFENDANT CITY OF CLEVELAND**

224. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

225. Plaintiff was subjected to unwelcome harassment based on sex, gender, gender expression, and failure to conform to sex-based stereotypes.

226. The harassment was severe and/or pervasive.

227. The harassment created an intimidating, hostile, abusive, offensive, and humiliating work environment.

228. The City knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

229. The City's conduct violated Ohio Revised Code Chapter 4112.

230. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT IX: FEDERAL DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT CITY OF CLEVELAND**

231. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

232. The ADA prohibits covered employers from discriminating against qualified individuals because of disability.

233. Alexus had an actual disability, a record of disability, and/or was regarded as disabled.

234. Alexus's anxiety and depression substantially limited one or more major life activities, including working, sleeping, concentrating, thinking, communicating, interacting with others, and caring for himself.

235. Alexus was qualified to perform the essential functions of his position, with or without reasonable accommodation.

236. The City knew or should have known of Alexus's disability and need for leave and/or accommodation.

237. Alexus suffered adverse employment actions, including discipline, denial of accommodation, and termination.

238. The City discriminated against Alexus because of his actual disability, record of disability, and/or perceived disability.

239. The City's "AWOL" reason was false because Alexus was on approved medical leave.

240. The City's stated reasons were pretext for disability discrimination.

241. As a direct and proximate result of the City's unlawful conduct, Alexus suffered damages.

**COUNT X: STATE DISABILITY DISCRIMINATION OHIO REVISED CODE CHAPTER 4112 AGAINST DEFENDANT CITY OF CLEVELAND**

242. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

243. Ohio Revised Code Chapter 4112 prohibits disability discrimination in employment.

244. Alexus had a disability, a record of disability, and/or was regarded as disabled under Ohio law.

245. Alexus was qualified to perform the essential functions of his position, with or without reasonable accommodation.

246. The City knew or should have known of Alexus's disability and need for leave and/or accommodation.

247. The City discharged Alexus without just cause and otherwise discriminated against him because of disability.

248. The City's "AWOL" reason was false and pretextual because Alexus was on approved medical leave.

249. The City's conduct violated Ohio Revised Code Chapter 4112.

250. As a direct and proximate result of the City's unlawful conduct, Alexus suffered damages.

**COUNT XI: FEDERAL FAILURE TO ACCOMMODATE DISABILITY AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT CITY OF CLEVELAND**

251. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

252. Plaintiff was disabled within the meaning of the ADA.

253. Plaintiff was otherwise qualified to perform the essential functions of his position with or without reasonable accommodation.

254. The City knew or should have known of Plaintiff's disability.

255. Plaintiff requested a reasonable accommodation by requesting medical leave and submitting medical documentation.

256. Medical leave was a reasonable accommodation.

257. The City approved Plaintiff's medical leave, confirming that the accommodation was available and feasible.

258. The City was required to engage in a good-faith interactive process.

259. The City failed to engage in a good-faith interactive process.

260. The City failed to identify and provide a reasonable accommodation.

261. The City failed to allow Plaintiff to complete his approved leave.

262. The City terminated Plaintiff while he was on approved medical leave.

263. The City's termination of Plaintiff for alleged "AWOL" status, while he was on approved medical leave, constituted a failure to accommodate.

264. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT XII: STATE FAILURE TO ACCOMMODATE DISABILITY OHIO REVISED CODE CHAPTER 4112 AGAINST DEFENDANT CITY OF CLEVELAND**

265. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

266. Plaintiff was disabled within the meaning of Ohio law.

267. Plaintiff was otherwise qualified to perform the essential functions of his position with or without reasonable accommodation.

268. The City knew or should have known of Plaintiff's disability.

269. Plaintiff requested a reasonable accommodation by requesting medical leave and submitting medical documentation.

270. The City failed to engage in a good-faith interactive process.

271. The City failed to provide reasonable accommodation.

272. The City failed to allow Plaintiff to complete his approved medical leave.

273. The City terminated Plaintiff while he was on approved medical leave.

274. The City's conduct violated Ohio Revised Code Chapter 4112.

275. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

## COUNT XIII: FEDERAL RETALIATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT CITY OF CLEVELAND

276. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

277. Title VII prohibits retaliation against an employee because the employee opposed unlawful employment practices, reported discrimination, reported harassment, participated in an investigation, or otherwise engaged in protected activity.

278. Plaintiff engaged in protected activity when he reported Gardner's discrimination, harassment, and misgendering to Human Resources on or about October 17, 2025.

279. Plaintiff engaged in protected activity when he reported Preston's threat and misgendering to Human Resources on or about November 11, 2025.

280. Plaintiff engaged in protected activity when he provided video evidence and identified witnesses.

281. The City knew Plaintiff engaged in protected activity.

282. After Plaintiff engaged in protected activity, the City subjected him to materially adverse actions, including discipline, write-ups, denial of a fair investigation, blaming him for reporting harassment, termination, and other actions that would dissuade a reasonable worker from making or supporting a charge of discrimination.

283. There was a causal connection between Plaintiff's protected activity and the City's materially adverse actions.

284. The timing of the discipline and termination supports causation.

285. The escalation after Plaintiff complained supports causation.

286. The City's failure to discipline Preston and Gardner while disciplining Plaintiff supports causation.

287. The City's stated reasons were false and pretextual.

288. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT XIV: STATE RETALIATION OHIO REVISED CODE CHAPTER 4112 AGAINST DEFENDANT CITY OF CLEVELAND**

289. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

290. Ohio Revised Code § 4112.02(I) prohibits retaliation against a person because that person opposed an unlawful discriminatory practice, made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.

291. Plaintiff engaged in protected activity by reporting discrimination, harassment, misgendering, and threats to Human Resources.

292. Plaintiff engaged in protected activity by providing evidence and identifying witnesses.

293. The City knew Plaintiff engaged in protected activity.

294. The City subjected Plaintiff to materially adverse actions after he engaged in protected activity.

295. The materially adverse actions included discipline, write-ups, denial of a fair investigation, blaming Plaintiff, termination, and other retaliatory treatment.

296. There was a causal connection between Plaintiff's protected activity and the City's materially adverse actions.

297. The City's stated reasons were false and pretextual.

298. The City's conduct violated Ohio Revised Code Chapter 4112.

299. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT XV: INDIVIDUAL LIABILITY FOR RETALIATION, AIDING AND ABETTING, INCITING, COERCING, OBSTRUCTING, AND/OR COMPELLING DISCRIMINATION OHIO REVISED CODE § 4112.02(I) AND § 4112.02(J) AGAINST DEFENDANTS GARDNER AND PRESTON**

300. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

301. Ohio Revised Code § 4112.02(I) makes it unlawful for any person to discriminate in any manner against any other person because that person opposed an unlawful discriminatory practice, made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.

302. Ohio Revised Code § 4112.02(J) makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act declared by Chapter 4112 to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with Chapter 4112 or any order issued under it, or to attempt directly or indirectly to commit any act declared by Chapter 4112 to be an unlawful discriminatory practice.

303. Gardner is a "person" under Ohio Revised Code Chapter 4112.

304. Preston is a "person" under Ohio Revised Code Chapter 4112.

305. Gardner personally participated in unlawful discriminatory, hostile, retaliatory, coercive, obstructive, and/or aiding-and-abetting conduct.

306. Gardner intentionally misgendered Plaintiff, refused to use his correct pronouns, stated she would not call him "a he," commented on his transition, made adverse comments about gender-affirming care benefits, singled him out for scrutiny, and contributed to the unlawful discipline and hostile work environment.

307. Gardner's conduct aided, abetted, incited, compelled, coerced, obstructed, and/or attempted to commit unlawful discriminatory practices.

308. Preston personally participated in unlawful discriminatory, hostile, retaliatory, coercive, obstructive, and/or aiding-and-abetting conduct.

309. Preston threatened Plaintiff, misgendered him, stated he would "f her up," stated Plaintiff was "still a female," and contributed to the hostile work environment and retaliatory response to Plaintiff's complaints.

310. Preston's conduct aided, abetted, incited, compelled, coerced, obstructed, and/or attempted to commit unlawful discriminatory practices.

311. Gardner and Preston acted intentionally, recklessly, maliciously, and/or with conscious disregard for Plaintiff's rights.

312. As a direct and proximate result of Gardner's and Preston's unlawful conduct, Plaintiff suffered damages.

**COUNT XVI: <u>FEDERAL FMLA INTERFERENCE FAMILY AND MEDICAL LEAVE ACT AGAINST DEFENDANT CITY OF CLEVELAND</u>**

313. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

314. The City was a covered employer under the FMLA.

315. Plaintiff was an eligible employee under the FMLA.

316. Plaintiff had a serious health condition under the FMLA.

317. Plaintiff was entitled to FMLA leave.

318. Plaintiff gave the City sufficient notice of his need for FMLA-qualifying leave.

319. The City approved Plaintiff for approximately sixty days of medical leave beginning on or about November 17, 2025.

320. The City was required to provide Plaintiff with all notices required by the FMLA and its implementing regulations.

321. The City failed to provide required FMLA notice.

322. The City failed to provide Plaintiff with eligibility notice.

323. The City failed to provide Plaintiff with a rights and responsibilities notice.

324. The City failed to provide Plaintiff with a designation notice.

325. The City failed to inform Plaintiff that his leave was FMLA-protected.

326. The City failed to inform Plaintiff how much leave would count against his FMLA entitlement.

327. The City failed to provide Plaintiff with the job-protected leave to which he was entitled.

328. The City terminated Plaintiff while he was on approved medical leave.

329. The City terminated Plaintiff for alleged "AWOL" status even though he was on approved medical leave.

330. The City interfered with, restrained, and denied Plaintiff's exercise of and attempt to exercise FMLA rights.

331. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

**COUNT XVII: <u>FEDERAL FMLA RETALIATION FAMILY AND MEDICAL LEAVE ACT AGAINST DEFENDANT CITY OF CLEVELAND</u>**

332. Plaintiff incorporates all preceding paragraphs as if fully rewritten herein.

333. The FMLA prohibits employers from retaliating against employees for exercising, attempting to exercise, or opposing interference with FMLA rights.

334. Plaintiff engaged in protected activity by requesting medical leave for a serious health condition.

335. Plaintiff engaged in protected activity by submitting medical documentation supporting his need for leave.

336. Plaintiff engaged in protected activity by taking approved medical leave.

337. The City knew Plaintiff requested and took medical leave.

338. The City subjected Plaintiff to an adverse employment action by terminating him.

339. The City terminated Plaintiff while he was still on approved medical leave.

340. The temporal proximity between Plaintiff's leave request, leave approval, and termination supports causation.

341. The City's "AWOL" explanation is false because Plaintiff was on approved medical leave.

342. The City's stated reason was pretext for FMLA retaliation.

343. The City retaliated against Plaintiff because he requested, attempted to use, and/or used protected medical leave.

344. As a direct and proximate result of the City's unlawful conduct, Plaintiff suffered damages.

## <u>DEMAND FOR RELIEF</u>

WHEREFORE, Alexus Johnson demands from Defendants the following:

(a) Issue an order requiring  to restore Johnson to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Johnson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Johnson's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Samuel B. Robb, Esq.*
Samuel Robb (0099035)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive
Suite 200
Independence, OH 44131
Phone: (216) 364-1329
Fax: (216) 291-5744
Email: sam.robb@spitzlawfirm.com

*Attorney For Plaintiff*
*Alexus Johnson*

## JURY DEMAND

Plaintiff Alexus Johnson demands a trial by jury by the maximum number of jurors permitted.

/s/ *Samuel B. Robb, Esq.*
Samuel Robb (0099035)
**SPITZ, THE EMPLOYEE'S LAW FIRM**